IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT P. HILLMANN, | ) |
| Plaintiff, | ) |
| v. | ) Wayne R. Andersen<br>) District Judge |
| CITY OF CHICAGO, a Municipal Corporation,<br>THE MUNICIPAL EMPLOYEES' ANNUITY<br>AND BENEFIT FUND OF CHICAGO AND<br>LOCAL 1001 OF THE LABORERS'<br>INTERNATIONAL UNION OF NORTH<br>AMERICA, | ) Case No. 04 C 6671 |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motion of Defendant, City of Chicago, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff's complaint alleges five causes of action against Defendant City of Chicago. Plaintiff Robert Hillmann was employed by the City of Chicago ("City") for twenty-nine years beginning in June 1973. On February 23, 1995, Plaintiff and the City entered into a settlement agreement (the "Agreement"), settling a prior claim of handicapped discrimination filed by Plaintiff under the Illinois Human Rights Act and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Pursuant to the Agreement, Hillmann was assigned the position of Deputy

Commissioner of the Bureau of Electricity in Streets and Sanitation. The position carried the job title of "Chief Timekeeper." Hillmann alleges that he had an oral agreement with the city that this new job would not involve use of his injured right arm, the written agreement notwithstanding.

As the Chief Timekeeper, Hillmann prepared reports regarding Bureau employees and documented the jobs they were performing. Hillmann maintained the Bureau's database, reviewed the monthly automobile mileage reimbursements for the Bureau and reported to the Deputy Commissioner on the various research projects he performed. Hillmann attended all 911 Board meetings, and all project work regarding the Chicago Emergency Telephone System was given to him for dissemination to Board members.

In late spring and summer of 2000, Patrick Slattery was named the Director of Staff Services in Streets and Sanitation. Hillmann's job duties were altered at this point. Hillmann claims that he was medically restricted from performing this additional, more taxing clerical work due to a host of pre-existing medical conditions, including cervical spondylosis, multilevel disc disease, cervical radiculopathy, brachial plexopathy, and arthritis. As a result of these conditions, Plaintiff allegedly requested that the City enforce the Agreement, which Plaintiff claims included the implicit provision that he not have to perform physically taxing work.

One day after making this request, Plaintiff was allegedly advised that one of the "bureau timekeepers" would be transferred and that Hillmann could be demoted to a Supervising Timekeeper. Plaintiff informed the City of Chicago in writing that his new job duties would violate the prior Agreement and requested that the City accommodate his physical impairments.

Plaintiff's job duties were then changed again on August 18, 2000, to include the following new job duties: "Mr. Hillmann will also be responsible for maintaining a 249-employee payroll; receiving and entering 30-35 edits per day in the Kronos system; performing a mass edit in Kronos for 90 employees who work in the field; entering exceptions into the Kronos system; entering daily activity onto time rolls; maintaining 300 Cards; and maintaining the Employee File Maintenance Module for said payroll."

On August 21, 2000, Assistant Commissioner Hennessy ordered Hillmann to report to the offices of Dr. Barry L. Fisher for a "Fitness for Duty Evaluation." Following this examination, the doctor recommended Hillmann for the position of Chief Timekeeper, but noted Plaintiff had limited use of his right arm and limited ability to lift and reach.

On September 1, 2000, Plaintiff filed a workers' compensation complaint with the Illinois Industrial Commission. At this point, he was transferred from his position as Chief Timekeeper to answering phones in the Bureau of Electricity, Construction Division. Following this demotion, Plaintiff alleges that a non-disabled employee, Steve Morales assumed the duties of Chief Timekeeper.

On September 13, 2000, Assistant Commissioner Hennessy ordered Hillmann to report for a "Functional Capacity Evaluation" for the position of Chief Timekeeper. The job description sent to the rehabilitation specialist contained Hillmann's newly added duties from August 18, 2000. On December 21, 2000, Hennessy ordered Plaintiff not to return to work, without pay and allegedly without explanation of his job status.

On January 23, 2001, Robert Serafin, Director of Workers' Compensation for the City, ordered Plaintiff to undergo medical tests at Mercy Hospital allegedly based on a referral from one Dr. Arnold. Plaintiff claims that prior to this date, he had never been seen by a Dr. Arnold.

On January 24, 2001, Serafin allegedly sent Plaintiff a letter denying medical care payments and liability under the Illinois Workers' Compensation Act because Hillmann's injuries were not work related. On January 29, 2001, Dr. Arnold determined that Hillmann's injuries were indeed work related. Despite this finding, Plaintiff did not receive payments under the Workers' Compensation Act.

On March 1, 2001, the City ordered Hillmann to return to work, allegedly without explanation for his layoff. Upon Hillmann's return to work, he was instructed to report to the Auto Pound, where his duties included opening and closing a heavy gate at the facility, which Plaintiff claims caused further injury. Plaintiff remained at the Auto Pound until his discharge on July 1, 2002.

Concurrent with these allegations of illegal job transfer and discharge, Plaintiff alleges that the City unjustly denied him a series of six merit pay increases between the dates of July 1, 2000 and June 1, 2002. Plaintiff also alleges that the City fraudulently altered his work history to hide this information. Specifically, Plaintiff claims that Assistant Commissioner Hennessy submitted an altered work history, in which five merit pay increase denials were expunged and the sixth denial was altered to indicate that Hillmann had received a pay increase. On March 28, 2001, Hillmann filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On July 1, 2002, Hillmann learned that his position was eliminated due to lack of funds.

On September 10, 2002, Plaintiff filed a timely charge of discrimination with the EEOC. He received a right-to-sue letter on September 9, 2004. Plaintiff filed a suit in the Circuit Court of Cook County on September 24, 2004. On October 15, 2004, the City removed the case to this court based on Counts II and IV of the complaint alleging violations of the ADA, 42 U.S.C. § 12101 et seq.

On May 16, 2005, Plaintiff claims that he first discovered he was denied merit pay increases. At this time, the City had produced a new version of Hillmann's work history in the City's Answers to Plaintiff's First Set of Interrogatories in this lawsuit. Upon discovery of these facts, Plaintiff filed a new charge of discrimination with the EEOC on July 5, 2005. He then received a right-to-sue letter from the U.S. Department of Justice Civil Rights Division on October 3, 2005.

In his Third Amended Complaint, Plaintiff alleges five counts against the City of Chicago: breach of contract (Count I); discrimination under the Americans with Disabilities Act (Count II); retaliation under the Americans with Disabilities Act (Count III); violation of the First Amendment pursuant to 42 U.S.C. §1983 (Count IV); and retaliation under Illinois Workers' Compensation Act (Count V).

## DISCUSSION

Summary judgment is appropriate when the parties' evidentiary materials show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 ( c ); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe all allegations and favorable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). However, in order to create a

question of fact, a party responding to a summary judgment motion must set forth specific facts showing that there is a genuine issue of material fact for trial. *LINC Financial Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

   I.   Breach of Contract

The City argues that it is entitled to judgment in its favor on Count I because it did not breach the 1995 Agreement. It is Plaintiff's claim that he received assurances from the City prior to his signing the Agreement that his new job as Chief Timekeeper would not involve duties that could be injurious to his right arm. The Agreement, though, is glaringly devoid of specific provisions, stating only that Plaintiff should be given the job as Chief Timekeeper and paid as such. The contract provides no particulars regarding what were to be Plaintiff's job duties, or for how long he was guaranteed to hold this employment.

The Agreement contained a so-called integration clause, indicating the parties' agreement that the written contract represents the sole repository of their intent. The Agreement specifically provides that "[t]his instrument . . . constitutes a contract and not a mere recital, and it contains the entire agreement between the parties hereto." Agreement, ¶ 12. As a result of this clause, the City contends that it should prevail on all of Plaintiff's contract claims relating to evidence not contained in the written agreement. Since Plaintiff is unable to point to a specific provision that was breached, the City claims that it is entitled to summary judgment.

The parol evidence rule generally forbids the use in evidence of a prior or contemporaneous agreement or terms not included in an integrated contract. *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc*. 212 F.3d 373, 380 (7th Cir. 2000) (rejected use of extrinsic evidence when contract had integration clause and terms were clear).

However, if a contract is ambiguous as to an issue in dispute, extrinsic evidence can be used to discover the genuine intent even if the contract contains an integration clause. *First American Commercial Bancorp v. Interior Architects, Inc.*, 2004 WL 2011398, at *9-10 (N.D. Ill. Aug 31, 2004).

The threshold issue on this matter, then, is whether the language of the contract is ambiguous enough on the disputed issue to allow consideration of extrinsic evidence, despite the integration clause. Here, Plaintiff does not ask the Court to interpret ambiguous language, as the Agreement contains no language that could reasonably be interpreted to describe the Chief Timekeeper job duties. Rather, Plaintiff asks the Court to add a new term to the agreement. This we will not do.

The 1995 Agreement mandated that the City hire Plaintiff and pay him as Chief Timekeeper. This the City did for over five years. Therefore, we grant the motion for summary judgment on Count I because the City did not breach the Agreement.

## II. Americans with Disabilities Act

The City also moves for summary judgment on Plaintiff's Americans with Disabilities Act ("ADA") claims, Counts II and III. In his Complaint, Plaintiff alleges that the City failed to reasonably accommodate him and denied him merit pay increases, thereby discriminating and retaliating against him in violation of the ADA. The ADA prohibits any covered entity from discriminating against a qualified individual with a disability on the basis of that disability. 42 U.S.C. § 12112(a). The City is a covered entity because it employs fifteen or more employees. *Id.* at § 12111(5). The City makes three claims in its motion. First, the City claims that the Plaintiff has not shown that a genuine dispute exists regarding the alleged discrimination and

retaliation. Second, the City argues that Plaintiff's claims regarding reasonable accommodation are barred by his original charge with the Equal Employment Opportunity Commission ("EEOC"). Third, the City argues that Plaintiff's claims regarding denial of merit pay increases are barred by the statute of limitations.

We deny summary judgment on Plaintiff's ADA claims in Counts II and III because we find that there are genuine issues of material fact which preclude the entry of summary judgment. The following issues of material fact, among others, exist which preclude the Court from granting summary judgment in the City's favor:

1. Whether the City fraudulently concealed the fact that Plaintiff was denied merit pay increases;
2. Whether Plaintiff knew, or should have known, that he was denied merit pay increases;
3. Whether the decision to discharge Plaintiff was motivated by the City's discriminatory intent;
4. Whether the City made reasonable accommodations;
5. Whether similarly situated employees were treated more favorably than Plaintiff;
6. Whether the City's stated reasons for Plaintiff's discharge are pretextual; and
7. Whether there is a causal link between Plaintiff's protected activity and Plaintiff's discharge;

For these reasons, we deny the City's motion for summary judgment on Count II (ADA discrimination) and Count III (ADA retaliation).

### III. Section 1983 Claims

In Count IV, Plaintiff alleges a cause of action under 42 U.S.C. § 1983. He claims that he was discharged because he was not politically aligned with his superior John Sullivan, in violation of his First Amendment rights. The City argues that this claim is time-barred.

The statute of limitations for § 1983 claims is two years. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). The statute begins to run on the date the plaintiff had notice that the challenged action may be unlawful, and not the date that he receives confirmation that he suffered an unlawful injury. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 2005).

Plaintiff filed his original complaint in Illinois state court on July 1, 2003. At that time he would have been within the two-year statute of limitations for the § 1983 claims. However, Plaintiff's original complaint did not contain any § 1983 claims. On September 26, 2003, Plaintiff voluntarily dismissed the original suit, without prejudice, pursuant to 735 ILCS 5/2-1009 of the Illinois Code of Civil Procedure. Under Illinois law, a party has one year to re-file an action that was voluntarily dismissed, regardless of whether the limitations period has expired. Plaintiff then refiled in state court and the City removed the case to this Court.

Plaintiff's Third Amended Complaint filed in this Court now alleges the § 1983 claims for the first time. The City argues that the § 1983 claims are time-barred because they were not asserted in the original complaint. Plaintiff argues that the claims are not time-barred because they arise out of the same facts alleged in the original complaint and thus relate back to that filing.

Under Fed. R. Civ. P. 15(c), a new claim contained in an amended complaint is not time-barred if the claim asserted in the amendment arises out of the same conduct, transaction or occurrence set forth in the original complaint. Accordingly, Plaintiff's § 1983 claim would not be barred if it arose from the same conduct, transaction or occurrence as his other claims alleged in the original complaint. The fact that an amendment changes the legal theory on which the action was initially brought is of no consequence if the factual situation upon which the action depends

remains the same *and has been brought to the defendant's attention by the original pleading*. *Bulie v. Stephen Woolway,* 2000 WL 528645, at *2 (N.D. Ill. March 27, 2000) (emphasis added).

Here, Plaintiff's Third Amended Complaint alleges a different set of facts than the original complaint, as well as adding the legal theory that Plaintiff was subjected to adverse employment actions in violation of the First Amendment because he lacked proper political affiliations. Plaintiff's § 1983 claim turns on the assertion that his lack of involvement with a political organization precipitated his discharge. However, this factual situation was not asserted in his original Complaint. Furthermore, Plaintiff's § 1983 claims alleges a legal theory, political patronage, that was not brought to the City's attention in the original pleading.

We, therefore, find that the § 1983 claims for First Amendment violation asserted in the Third Amended Complaint do not relate back to the filing of the original complaint because they do not arise from the same conduct, transaction, and occurrence as the claims contained in the original complaint. Accordingly, we grant the City's motion for summary judgment on Count IV. We note that the plaintiff may be able to file a claim under the Shakman Accord.

### IV. State Law Workers' Compensation Claims

In Count V, Plaintiff asserts a claim for retaliation under the Illinois Workers' Compensation Act. Plaintiff filed a workers' compensation claim on September 1, 2000 as a result of his alleged job-related injuries. In his Complaint, Plaintiff alleges that in retaliation for this claim, he was: 1) denied medical benefits; 2) transferred; and 3) discharged. In its motion, the City argues that: 1) the medical benefits and job transferring claims are untimely; and 2) the retaliatory discharge claim is barred by the Tort Immunity Act. We will address each of these arguments in turn.

### A. Retaliatory Denial of Medical Benefits and Transfer Claims

The City first argues that Plaintiff has exceeded the statute of limitations for two of the workers' compensation claims—the denial of medical benefits and job transfer claims. We agree. A plaintiff has one year from the date of alleged injury to file his workers' compensation retaliation claims against the City. 745 ILCS 10/8-101(a), (c). In this case, Plaintiff claims that he was denied medical benefits on January 24, 2001. Further, his job transfer occurred on March 1, 2001. As Plaintiff did not allege this cause of action until September 24, 2004, in the Third Amended Complaint, these claims are time-barred under the statute of limitations.

Moreover, even if we were to find the denial of medical benefits and job transfer workers' compensation claims timely filed, the City would be entitled to judgment in its favor because Illinois courts have refused to recognize the tort of workers' compensation retaliation when the challenged employment actions fall short of actual discharge. *See Kelsay v. Motorola, Inc.*, 384 N.E.2d 353 (Ill. 1978); *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858 (Ill.App.Ct. 2000); *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 683 (Ill.App.Ct. 1999).

For these reasons, summary judgment is granted in favor of the City on Plaintiff's Count V claims of retaliation under the Workers' Compensation Act for denial of medical benefits and transfer.

### B. Retaliatory Discharge Claim

The City next contends that Plaintiff's retaliatory discharge workers' compensation claim is barred by Sections 2-101 and 2-109 of the Illinois Tort Immunity Act. Plaintiff counters that as his discharge was ministerial rather than discretionary, his claim is not barred by the Act.

We deny the motion for summary judgment on this claim because issues of material fact are present. While the City claims that its decision to eliminate Plaintiff's job was discretionary, evidence is also presented that such decisions are limited by the ministerial duties under the Collective Bargaining Agreement and the rights of union employees. See, e.g., *Rizzi v. City of Chicago*, 2003 WL 23023847, at * 11 (Ill. App. Ct. 2003).

Therefore, the City's motion for summary judgment on the Workers' Compensation retaliatory discharge claim in Count V is denied.

### CONCLUSION

For the foregoing reasons, we grant in part and deny in part the City of Chicago's motion for summary judgment. (# 156). The motion is granted as to Plaintiff's Counts I, IV, and the denial of medical benefits and transfer claims in Count V. Judgment is hereby entered in favor of the City on these claims. The motion is denied as to Counts II, III, and the retaliatory discharge claim in Count V.

Plaintiff's motion to set a trial date (# 154) is denied at this time, and this case is set for status on October 18, 2007 at 9:00 a.m.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated:   September 26, 2007