UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT P. HILLMANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 6671 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In 2004, Plaintiff Robert P. Hillmann filed this action against his former employer, the City of Chicago, alleging that his termination was illegal on various grounds. After a protracted history, this Court presided over a jury trial in April 2013. The jury returned a verdict in Defendant's favor on all charges except Plaintiff's claim of retaliatory discharge under the Illinois Workers' Compensation Act, 820 Ill. Comp. Stat. 305/1 *et seq.*, on which the jury returned a verdict in Plaintiff's favor. The jury assessed damages of two million dollars. Plaintiff's claim of retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, was before the bench at trial; on March 31, 2014, the Court issued an opinion granting judgment in Defendant's favor on that claim and ruling on various post-trial motions. (R. 539, Mem. Op. & Order); *Hillmann v. City of Chicago*, No. 04 C 6671, --- F. Supp. 2d ---, 2014 WL 1613921 (N.D. Ill. Mar. 31, 2014). Presently before the Court is Plaintiff's motion for reconsideration of the Court's ruling on Defendant's motion for remittitur.

This Court assumed responsibility for this lawsuit after the death of its dear colleague, William J. Hibbler. This opinion is the Court's third and hopefully final opinion in this delayed litigation, which has been tried twice before a jury. The Court's previous opinion thoroughly

laid out the facts of the case and its extensive procedural history. For the sake of judicial economy, the Court assumes familiarity with those facts and does not repeat them here except as directly pertinent to the issue at hand.

Plaintiff began working for the Chicago Park District in June 1973 as a park attendant. After approximately five and a half years, he took a job in the Chicago Department of Streets and Sanitation, where he continued to work until he was terminated in July 2002 in retaliation for exercising his rights under the Workers' Compensation Act. At the trial, Professor Larry DeBrock testified as an expert witness. DeBrock performed an analysis of Plaintiff's pension loss, and he testified that if Plaintiff had retired at age 50, the present value of his lost pension benefits would be approximately $1.3 million. If Plaintiff retired at age 55, the present value of his lost pension benefits would be around $1.2 million. Jane Tessaro also testified about Plaintiff's pension loss. Tessaro was the manager of the benefits department at the Municipal Employees Annuity and Benefit Fund of Chicago (the "Pension Fund" or the "Fund"), the pension fund for some City workers. Tessaro testified that when Plaintiff was terminated, he had 21 years of pension credit in the Fund, which would have enabled him to start collecting benefits at age 55.

In September 2005, Plaintiff withdrew all of his pension contributions, which amounted to $87,192.95. He testified that he needed the money to pay bills after he was terminated. Once an employee receives a refund of his pension contributions from the Fund, he forfeits all future pension benefits. Tessaro testified that, given Plaintiff's termination on July 31, 2002, if Plaintiff had not withdrawn money from his account, he would have received $2,091.00 per month beginning at age 55. If he had not been terminated and had instead continued to work at his

2

same salary until age 55, he would have received a pension of $3,507.00 per month beginning at age 55.

Following the trial, Defendant moved pursuant to Federal Rule of Civil Procedure 59 for the Court to reduce the jury's two-million-dollar award to $15,000.00. (R. 515, Def.'s Mot. Alter J.) Because Plaintiff failed to respond to Defendant's motion, the Court assumed that he agreed with any offset calculations and found that he had waived any objection. *Hillmann*, 2014 WL 1613921, at *42. The Court set off the $1.2 million Plaintiff had already received or would receive as a result of his worker's compensation award and reduced the damages for pain and suffering so that Plaintiff's remitted award totaled $400,000.00. *Id.* at *42-*43. The Court gave Plaintiff the option of accepting the remittitur or requesting an evidentiary hearing as to damages. *Id.* at *43.

Plaintiff now contends that he thought briefing on the issue of damages was suspended until the Court ruled on Defendant's motion for a new trial, and he asks the Court to reconsider its ruling on Defendant's motion for remittitur with the benefit of Plaintiff's responsive briefing. (R. 540, Pl.'s Mot. Reconsider.)

## LEGAL STANDARDS

Any order "that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment[.]" Fed. R. Civ. P. 54(b). "An order that offers a choice between a remitted award and a new trial is not a final decision." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 739 (7th Cir. 2004). Accordingly, the Court may freely reconsider or revise its prior ruling on Defendant's motion for remittitur. Reconsideration is appropriate "when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's

3

arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). However, "as a rule courts should be loathe to [reconsider prior rulings] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

The jury awarded Plaintiff damages only on his state law claim, so Illinois state law governs the Court's review of that award. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 611 (7th Cir. 2006). Although courts in the Seventh Circuit typically compare a damages award with damages awards in similar cases, *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 408 (7th Cir. 2010), as Defendant urges this Court to do, that is not the practice in Illinois courts, *Richardson v. Chapman*, 676 N.E.2d 621, 628 (Ill. 1997) (collecting cases). Defendant contends that the statement in *Naeem* that state law should govern damages is dicta and does not indicate the prevailing law in the Circuit. (R. 544, Def.'s Resp. at 2-3.) Defendant maintains that the proper approach to damages is to compare awards in similar cases, regardless of whether the decision is based in state or federal law. (*Id.*) (citing *Arpin v. United States*, 521 F.3d 769, 776-77 (7th Cir. 2008); *Jutzi-Johnson v. United States*, 263 F.3d 753, 759-60 (7th Cir. 2001)). In both *Arpin* and *Jutzi-Johnson*, however, the district courts were required to consider awards in similar cases in order to properly explain their reasoning pursuant to Federal Rule of Civil Procedure 52(a) because they were determining the appropriate award following bench trials. *See Arpin*, 521 F.3d at 776 ("When a federal judge is the trier of fact, he, unlike a jury, is required to explain the grounds of his decision. This means, when the issue is the amount of damages, that the judge must indicate the reasoning process that connects the evidence to the

conclusion." (citing Fed. R. Civ. P. 52(a); *Jutzi-Johnson*, 263 F.3d at 758) (internal citation and quotation marks omitted)). Where, as here, there has been a jury verdict and the court's responsibility is to review the jury award rather than determine an award, the Supreme Court has held that courts must apply the appropriate state standard for review of damages on a post-trial motion. *See Naeem*, 444 F.3d at 611 (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 431 (1996)). The Court thus applies Illinois law regarding review of jury awards.

"A remittitur is an agreement by the plaintiff to relinquish, or remit, to the defendant that portion of the jury's verdict which constitutes excessive damages and to accept the sum which has been judicially determined to be properly recoverable damages." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 409 (Ill. 2006). The practice of remittitur has long been acknowledged in Illinois as a way to promote "both the administration of justice and the conclusion of litigation." *Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1079 (Ill. 1997). Nevertheless, "[t]he determination of damages is a question reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court." *Richardson*, 676 N.E.2d at 628. "The deference given to the careful deliberative process of the jury is overcome if, after examining the evidence presented at trial, the trial judge determines that the jury verdict is excessive." *Best*, 689 N.E.2d at 1079. "An award of damages will be deemed excessive if it falls outside the range of fair and reasonable compensation or results from passion or prejudice, or if it is so large that it shocks the judicial conscience." *Richardson*, 676 N.E.2d at 628 (citing *Richter v. Nw. Mem'l Hosp.*, 532 N.E.2d 269 (Ill. App. Ct. 1st Dist. 1988)). For an award to fall within the range of reasonable compensation, "all the law requires is that the plaintiff present evidence which will establish, with a fair degree of

5

probability, a basis for the assessment of damages." *Sutton v. Overcash*, 623 N.E.2d 820, 838 (Ill. App. Ct. 3d Dist. 1993).

It is appropriate to reduce an award when necessary to prevent a departure from the evidence presented at trial. *Richardson*, 676 N.E.2d at 628. If the court finds the award to be excessive, it "may not allow the verdict to stand but must act to correct the injustice" by ordering a remittitur with the plaintiff's consent. *Best*, 689 N.E.2d at 1079-80 (quoting *Haid v. Tingle*, 579 N.E.2d 913, 916 (Ill. App. Ct. 1st Dist. 1991)). If the plaintiff does not consent, the court must order a new trial to be held on damages. *Id.* at 1080. Finally, "the application of remittitur should be considered on a case-by-case basis because the evidence and circumstances supporting verdicts must be carefully examined." *Id.*

## ANALYSIS

Plaintiff avers that he did not intend to waive his argument regarding set-off and that his failure to respond to Defendant's motion was based on his understanding that the briefing was stayed. (R. 541, Pl.'s Mem. Reconsider at 3.) The Court thought it was clear in its intention to resolve as much of the case as possible at once, rather than drag this ten-year-old case through multiple separate briefing schedules. Nevertheless, to ensure that its initial decision would not "work a manifest injustice," *Christianson*, 486 U.S. at 817, the Court will consider Plaintiff's arguments in response to Defendant's motion for remittitur at this late date.

Defendant argues that Plaintiff is not entitled to pecuniary damages and so to the extent the jury award includes lost pension benefits, it should be set aside. (R. 516, Def.'s Mem. Alter J. at 5.) Defendant contends that recovery of pension benefits is precluded by Judge Andersen's 2008 holding that Plaintiff was judicially estopped from recovering back pay or front pay because he received a worker's compensation award based on his representations to the Illinois

6

Workers' Compensation Commission that he was totally disabled and could not work any job. (*Id.* at 5-6) (citing R. 223, Mem. Op. & Order). In this Court's prior opinion, it concluded that pension is not necessarily the same as front pay, and thus Judge Andersen's previous ruling does not estop Plaintiff from seeking lost pension benefits. *Hillmann*, 2014 WL 1613921, at *41. Defendant next argues that Plaintiff is not entitled to lost pension benefits because he withdrew all of his pension contributions in 2005. (R. 516, Def.'s Mem. Alter J. at 6.) Again, the Court concluded in its prior opinion that the jury was presented with evidence on Plaintiff's decision to withdraw his pension benefits, and it evidently determined that Defendant was liable for his loss. *Hillmann*, 2014 WL 1613921, at *41. The Court declined to disrupt the jury's determination without good cause and held that Plaintiff was entitled to the lost pension benefits the jury awarded. *Id.* (citing *Richardson*, 676 N.E.2d at 628). Because neither party has provided reason for the Court to reconsider these two holdings,[1] the Court turns now to the issue of the set-off.

Defendant asks the Court to offset Plaintiff's workers' compensation award from his pension benefits. (*Id.* at 13.) Defendant establishes that Plaintiff had received $433,748.92 in workers' compensation payments as of May 3, 2013. (*Id.*; R. 516, Ex. I, Comm. on Finance Payments.) Defendant calculates, according to Plaintiff's life expectancy as projected by DeBrock, that Plaintiff will receive $828,701.72 in future workers' compensation payments. (R. 516, Def.'s Mem. Alter J. at 13.) Thus, assuming the jury award of $2 million includes $1.2

---

[1] In Defendant's response to Plaintiff's motion for reconsideration, it continues to argue that Plaintiff was judicially estopped from seeking pecuniary damages, including lost pension benefits, pursuant to Judge Andersen's Order of December 2008, (R. 544, Def.'s Resp. at 6-7), and that Defendant is not responsible for the harm Plaintiff suffered as a result of his failure to timely apply for duty disability benefits and his decision to withdraw the money from his pension account, (*id.* at 12). Defendant adds no new law, facts, or arguments in support of its position, however, and merely restates the arguments it had previously made, which the Court found meritless. Restating these same arguments in response to Plaintiff's motion for reconsideration without providing the Court any reason to reconsider its prior opinion is unavailing.

7

million of lost pension benefits, as the Court concluded it did,[2] Defendant maintains that the Court should offset the $1,262,450.64 Plaintiff will receive in workers' compensation benefits from the award of lost pension benefits. (*Id.*) Defendant argues that without a set-off, the jury award overcompensates Plaintiff. (R. 544, Def.'s Resp. at 12.)

At bottom, the issue presented by Defendant's motion for remittitur is what position Plaintiff would have been in if he had not been terminated in retaliation for exercising his rights under the Workers' Compensation Act. "The purpose of awarding compensatory damages is to make the injured party whole and restore him to the position he was in before the loss, but not to enable him to make a profit or windfall on the transaction." *Gambino v. Blvd. Mortg. Corp.*, 922 N.E.2d 380, 417 (Ill. App. Ct. 1st Dist. 2009). Plaintiff contends that if he had not been fired, he would have received "both his workers' compensation payments for his inability to work and the pension benefits to which he contributed throughout his working life." (R. 541, Pl.'s Mem. Reconsider at 11.) Defendant maintains that if he had not been fired, Plaintiff would have received duty disability benefits through the Pension Fund from September 2002 until his retirement and that any workers' compensation award he received would have been deducted from the benefits he received from the Fund. (R. 544, Def.'s Resp. at 9.) As explained in detail below, the Court finds that both parties correctly but incompletely state the position Plaintiff would have been in but for the illegal termination. Accordingly, it is not appropriate to offset his workers' compensation award from the jury award.

---

[2] Although the Court obviously has no clear indication as to the basis of the jury's award, the jury was instructed to award damages for the value of lost pension benefits and for emotional pain and suffering. (Tr. at 1182:3-13.) Both parties assume that $1.2 million of the jury award was to compensate Plaintiff for his lost pension benefits, as that was the value established by trial witnesses. (*See* R. 516, Def.'s Mem. Alter J. at 7-8; R. 545, Pl.'s Reply at 6.) Considering the totality of the evidence presented at trial, the Court finds this assumption sound.

8

I. **Whether the Pension Code permits pension payments to be offset by workers' compensation payments**

First, Plaintiff contends that because the terms of the pension plan under the Fund do not allow for a set-off, "but for the illegal firing, Plaintiff would have been able to receive both his workers' compensation award and his vested pension." (R. 541, Pl.'s Mem. Reconsider at 9.) Plaintiff cites the Fund's informational booklet, (*id.* at 9-10), which states that "[e]mployees disabled as the result of an accidental injury have a right to receive benefits under the provisions of the Workers' Compensation Act, and any amount so received or receivable under such Act must be deducted from payments of duty disability benefit," (R. 541-1, Ex. A, Fund booklet at 38). Plaintiff thus contends that the pension plan does not authorize the deduction of a workers' compensation award from pension payments, only from duty disability benefits. (R. 541, Pl.'s Mem. Reconsider at 8-9.)

Defendant criticizes Plaintiff's reliance on the Pension Fund's booklet instead of the Pension Code, as the booklet itself advises that "it is not intended to contain a synopsis of all the provisions of the law governing the Fund" and states that "[t]he full text of the law governing the Fund may be found in Chapter 40, Act 5, Articles 1, 8 and 20 of the Illinois Compiled Statutes, and supersedes anything stated or implied in this booklet." (R. 544, Def.'s Resp. at 8; R. 541-1, Ex. A, Fund booklet at 5.) The Fund's booklet is a helpful summary of the Pension Code and is not improperly relied upon. *See Mathews v. Sears Pension Plan*, 144 F.3d 461, 468-69 (7th Cir. 1998). The statutory language of the Illinois Pension Code, which Defendant cites, supports Plaintiff's interpretation of the booklet and states, as relevant here, that an eligible employee shall receive duty disability benefits "during disability until the employee attains age 65 . . . . The employee shall thereafter upon withdrawal from service receive such annuity as is otherwise provided in this Article." 40 Ill. Comp. Stat. 5/8-160. The Pension Code also provides that any

9

award an employee receives "under the Workers' Compensation Act . . . shall be applied as an offset to the disability benefit paid by the Fund . . ." 40 Ill. Comp. Stat. 5/8-163(c). The trial testimony of the Fund's benefits manager, Jane Tessaro, confirmed that if an employee receives duty disability benefits, his award is offset by any award he receives under the Workers' Compensation Act. (Trial Tr. at 1047:6-16.)

Plaintiff avers that the above is the only scenario in which a set-off is permitted by the pension plan. (R. 541, Pl.'s Mem. Reconsider at 10.) Plaintiff contends that this provision is irrelevant because he was not receiving duty disability from the Fund, and thus "the offset provisions under the pension plan were never triggered in this case." (*Id.*) Plaintiff argues that if he "had not been injured, upon retirement from the City he would have had a fully vested pension, no permanent medical injury, and be able to work elsewhere upon his retirement from the City." (*Id.* at 14.) This statement is probably true, but it is also irrelevant. Plaintiff *was* injured, and prevailing against Defendant in his wrongful termination claim does nothing to change that. The purpose of damages for wrongful termination is to return Plaintiff to the position he would have been in had he never been wrongfully fired—he still would have had a permanent medical injury and been unable to work elsewhere. Defendant contends that Plaintiff's representations to the Illinois Workers' Compensation Commission establish that if he had not been terminated, he would have been on duty disability through the Pension Fund from September 2002 until his retirement. (R. 544, Def.'s Resp. at 9.) Plaintiff applied for duty disability benefits in October 2002, and he concedes that the only reason he did not receive the benefits is because he was no longer an employee and was thus ineligible to receive duty disability benefits through the Fund. (R. 541, Pl.'s Mem. Reconsider at 10.) Accordingly, the Court concludes that but for the illegal termination, Plaintiff would have received duty disability

10

benefits beginning in October 2002. (*See* Trial Tr. at 1048:18-1049:5.) These benefits would have been paid from the Pension Fund and would have been offset by the amount of his workers' compensation award.

This conclusion does not, however, have the effect Defendant wishes it to. The Pension Code requires the City to contribute to an employee's pension fund in his stead while he receives duty disability benefits under the Fund. 40 Ill. Comp. Stat. 5/8-187. Additionally, Plaintiff would have continued to receive years-of-service credit towards his pension eligibility while receiving duty disability benefits under the Fund. 40 Ill. Comp. Stat. 5/8-232. The Court has accepted Defendant's claim that but for the illegal termination, Plaintiff would have received duty disability benefits until he retired, and the Court accordingly concludes that Defendant would have been required to contribute to Plaintiff's pension fund in his stead and that Plaintiff would have continued accruing service credit towards his pension eligibility. The trial evidence established that Plaintiff would have been eligible to retire and receive a monthly pension payment when he turned 55 in July 2009 and that the total value of Plaintiff's lost pension benefits is $1.2 million. The Pension Code provides that Plaintiff's workers' compensation award would have been deducted from his duty disability benefits, 40 Ill. Comp. Stat. 5/8-163(c), but not from his pension payments once he retired.

## II.    Whether the award overcompensates Plaintiff

Defendant argues that Plaintiff's workers' compensation award should be offset from the jury award for lost pension benefits to prevent double recovery. (R. 516, Def.'s Mem. Alter J. at 13.) The purpose of damages in a wrongful termination suit is to make the plaintiff whole. *See Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1212 (7th Cir. 1989). "In order to make plaintiffs whole, a discharged employee should be compensated for pension benefits lost through the wrongful termination. . . . Pension benefits may not be available where an award would make

a plaintiff more than whole." *Id.* (quoting *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 374 (3d Cir. 1987) (internal citations and alterations omitted)); *see also Wilson v. Hoffman Grp., Inc.*, 546 N.E.2d 524, 530 (Ill. 1989) ("double recovery is a result which has been condemned"). Thus, under Illinois law, the Court must determine whether the jury award that includes lost pension benefits appropriately compensates Plaintiff for the wrongful termination or whether it provides him with double recovery.

Plaintiff argues that, contrary to Defendant's assertion, he would not be overcompensated if the Court declined to offset his workers' compensation award because it and the jury's award of lost pension benefits provide distinct reparations. (R. 541, Pl.'s Mem. Reconsider at 12.) Plaintiff contends that workers' compensation regimes are designed to address a specific situation and provide a substitute for tort liability for work-related accidents, (*id.*) (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 662 (2006)), while the Pension Fund has a purpose that is "wholly independent of the purpose of the Workers' Compensation Act," (*id.* at 13). Plaintiff thus argues that pension benefits should not be offset pursuant to the collateral source rule. (*Id.* at 12-13.)

"Under the collateral source rule, the amount of damages a plaintiff is entitled to in a civil action will not be decreased by the amount of benefits the plaintiff received from a source wholly independent and collateral to the wrongdoer." *City of Chi. v. Human Rights Comm'n*, 637 N.E.2d 589, 592 (Ill. App. Ct. 1st Dist. 1994). Whether to deduct or set off collateral benefits "lies within the sound discretion of the trial court." *Id.* at 593. In *City of Chicago v. Human Rights Commission*, the Illinois appellate court found that "[i]n discrimination cases, funds supported in part, but not entirely, by contributions from a defendant, such as unemployment compensation and social security disability benefits are generally considered collateral," but that

12

there was no "clear consensus on the issue of whether pension and/or disability benefits fall within the collateral source rule" and instead "the result appears to be determined on a case by case basis." *Id.* at 592-93 (citations omitted) (citing *Nat'l Labor Relations Bd. v. Gullett Gin Co.*, 340 U.S. 361, 364 (1951); *E.E.O.C. v. O'Grady*, 857 F.2d 383 (7th Cir. 1988)).

Although the issues in *E.E.O.C. v. O'Grady* involved wrongful termination under a federal statute (the Age Discrimination in Employment Act) rather than a state law, the Seventh Circuit's reasoning in that case applies to the issues at bar. There, the Seventh Circuit affirmed the district court's refusal to offset the award of back pay and damages by the amount of pension benefits wrongfully-terminated corrections officers had received since their terminations. 857 F.2d at 391. The court found that the pension benefits were earned by the claimants as part of their compensation rather than paid for by the employer, and that the contributions to the pension fund were intended to fulfill a different policy goal than the back pay awards. *Id.* The court concluded that the employer "would have had to contribute to the [pension fund] and pay claimants' salaries if it had not wrongfully retired the corrections officers" and held that "[t]he collateral source rule should not afford a 'discrimination bonus' by allowing an adjudicated violator of the ADEA to pay less than it would have paid had it acted lawfully." *Id.*; *see also Halek v. United States*, 178 F.3d 481, 483 (7th Cir. 1999) (finding that the collateral source rule should have prevented the offset of the plaintiff's pension benefits from the negligence damages when his work-related accident forced him to retire early because the plaintiff "paid, directly or indirectly, for the employee benefits . . . [and] the tortfeasor should not be permitted to appropriate those benefits by being allowed to offset them against what he owes his victim"). Finally, in a general discussion of the application of the collateral source rule to employment benefits, the Seventh Circuit has stated that if a court is faced with a choice between conferring a

13

windfall on the wrongdoer and conferring a windfall on the victim, the victim "is the logical choice." *Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1429 (7th Cir. 1986); *see also O'Grady*, 857 F.2d at 389.

The general rule is that "there is no double recovery as long as plaintiff has contributed to the original source of the payments received." *Laird v. Ill. Cent. Gulf R. Co.*, 566 N.E.2d 944, 955 (Ill. App. Ct. 5th Dist. 1991); *see also Human Rights Comm'n*, 637 N.E.2d at 593 ("Arguably, the disability benefits in this case were collateral since both the City and its employees contributed to the annuity fund."). In more recent cases, the Seventh Circuit has indicated that whether the employee contributes is less important than "whether the victim is put in the same position he would have occupied had his rights been respected." *U.S. Can Co. v. N.L.R.B.*, 254 F.3d 626, 634 (7th Cir. 2001). To determine whether payments should be offset, "courts must look to the purpose and nature of the fund and of the payments and not merely at their source." *Laird*, 566 N.E.2d at 956. As discussed above, Plaintiff contributed to his pension fund, and if his rights had been respected, his workers' compensation award would not have been offset from his pension benefits. Keeping the lessons from *O'Grady* in mind, the Court now examines "the purpose and nature" of the Pension Fund and the Workers' Compensation Act.

The Pension Code "is beneficial in nature and is to be liberally construed in favor of the beneficiary." *Lelis v. Bd. of Trustees of Cicero Police Pension Fund*, 990 N.E.2d 1208, 1214 (Ill. App. Ct. 1st Dist. 2013). The Illinois Supreme Court has concluded that the legislative history of the Pension Code "indicates a general intent to protect the pension benefits of public employees," *Peters v. City of Springfield*, 311 N.E.2d 107, 112 (Ill. 1974), and Illinois courts "have time and again made clear that any reduction, diminution or impairment of pension benefits violates an enforceable contractual relationship between an employee and his employer,

14

impinges upon the employee's constitutional protections, and will not be tolerated," *Gillen v. State Farm Mut. Auto. Ins. Co.*, 812 N.E.2d 595, 600 (Ill. App. Ct. 1st Dist. 2004) (collecting cases and concluding that "the difference between worker's compensation and pension payments [are] a distinction *with import*"). Pension benefits are generally considered "compensation for services previously rendered" because the amount of the annuity payments are determined by the employee's wage and length of service. *Laird*, 566 N.E.2d at 956 (holding that the collateral benefits did not warrant an offset from damages).

The Workers' Compensation Act, on the other hand, "is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment." *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1225 (Ill. 1990). "Unlike pension provisions or group life, health, and disability insurance plans—negotiated or granted as pay supplements or substitutes—workers' compensation prescriptions have a dominant employer-oriented thrust: They modify, or substitute for, the common-law tort liability to which employers were exposed for work-related accidents." *Howard Delivery Serv.*, 547 U.S. at 662; *see Meerbrey*, 564 N.E.2d at 1225 ("the Act imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer"). "Although an employee seeking such compensation must prove that he has sustained a permanent medical disability as a result of a work-related accident . . . the award of compensation is not for the disability as such, but for the impaired earning capacity which results from that disability." *E. R. Moore Co. v. Indus. Comm'n*, 376 N.E.2d 206, 209 (Ill. 1978) (internal citations omitted) (citing *Bd. of Educ. v. Indus. Comm'n*, 290 N.E.2d 247 (Ill. 1972); *Consol. Coal Co. v. Indus. Comm'n*, 145 N.E. 675 (Ill. 1924)). Worker's compensation awards are not duplicative with pension plans because they are meant to recompense an employee for injuries he may have suffered due to the

15

employer's negligence in exchange for a waiver of tort liability—workers' compensation awards have nothing to do with an employee's work and are not intended to fund an employee's retirement. *See Wood Dale Elec. v. Ill. Workers Comp. Comm'n*, 986 N.E.2d 107, 113 (Ill. App. Ct. 1st Dist. 2013) (holding that where the pension payments "are the result of normal pension retirement benefits, wholly unrelated to the claimant's workers' compensation accident . . . those payments cannot entitle [the employer] to a credit against its liability under the [Workers' Compensation] Act").

Defendant contends that "compensatory damages awards are not intended to be 'retirement' plans." (R. 544, Def.'s Resp. at 12.) "Damages in employment discrimination cases are not intended to insure a plaintiff's future financial success. Damages should ordinarily extend only to the date upon which the sting of any discriminatory conduct has ended." *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1371 (7th Cir. 1992) (quoting *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 439 (7th Cir. 1992) (quotation marks omitted)). Here, however, the pension benefits Plaintiff lost because of his wrongful termination were, in fact, intended to be his retirement plan. When asked about the purpose of the Pension Fund, Tessaro testified:

> If the person has other employment, if they worked outside of the City of Chicago employment, then they would have Social Security coverage; but while they are working for the City of Chicago and participating in the municipal fund, during that employment, they don't have any Social Security coverage. The municipal pension fund basically, you know, takes the place of Social Security coverage.

(Trial Tr. at 1060:3-9.) Rather than being overcompensatory, Plaintiff's lost pension benefits were appropriate damages because they were originally intended to insure his future financial stability. *See Midgett v. Sackett-Chicago, Inc.*, 473 N.E.2d 1280, 1285 (Ill. 1984) ("The loss of pension rights would be a consequence of his discharge, and he may allege it as an element of damages in a retaliatory-discharge action against his employer."). The purpose of Plaintiff's pension was to provide for him during his retirement, and the purpose of his workers'

16

compensation award was to compensate him for his disability. Accordingly, the Court finds no overlap between the workers' compensation award Plaintiff received and the jury award of lost pension benefits.

Defendant argues that the City pays Plaintiff's workers' compensation award, "as it would have paid his duty disability benefits from the Pension Fund," and thus the collateral source rule is inapplicable to the matter at hand. (R. 544, Def.'s Resp. at 13.) This argument is misleading for several reasons. First, while the duty disability benefits would be paid from the Pension Fund, those payments come from contributions to the fund made by both Plaintiff and Defendant during the course of Plaintiff's employment. Second, the award Defendant seeks to reduce is the pension benefits Plaintiff would have received during his retirement, not the duty disability benefits he would have received while he continued to work. And finally, Illinois courts that have applied the collateral source rule to employment benefits have done so in exactly this situation: when the benefits the employer seeks to set off were actually bargained-for compensation. *See, e.g., Harden v. Playboy Enters., Inc.*, 633 N.E.2d 764, 772 (Ill. App. Ct. 1st Dist. 1993); *Laird*, 566 N.E.2d at 955-56. Based on Illinois case law and the teachings of *O'Grady*, the Court concludes that it would be inappropriate to deduct Plaintiff's workers' compensation award from his lost pension benefits.

Finally, Defendant argues that Plaintiff failed to present sufficient evidence at trial to warrant the jury's award, and thus its motion for remittitur should be granted. (R. 544, Def.'s Resp. at 14) (citing *McKnight*, 973 F.2d at 1372). "The determination of damages is a question reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court." *Richardson*, 676 N.E.2d at 628. "In order to recover lost earnings, all the law requires is that the plaintiff present evidence which will establish, with a fair

degree of probability, a basis for the assessment of damages." *Sutton*, 623 N.E.2d at 838. The Court concludes that the evidence presented at trial through the expert testimony of DeBrock and Tessaro establishes "with a fair degree of probability" a basis for the jury's award of lost pension benefits. *See id.* Because the lost pension benefits are supported by expert testimony, the Court finds that it does not fall outside the range of reasonable compensation, result from passion or prejudice, or shock the judicial conscience. *See Richardson*, 676 N.E.2d at 628.

When the Court set the briefing schedule on the instant motion for reconsideration, it specifically requested that Defendant address whether an evidentiary hearing would be useful. Defendant stated that an evidentiary hearing is not warranted, (R. 544, Def.'s Resp. at 14), and Plaintiff did not request one in his reply. Defendant criticizes DeBrock's calculations, but those criticisms are unavailing. First, Defendant contends that DeBrock's calculations relied on erroneous assumptions that Plaintiff would have continued to work for the City after September 4, 2002. (R. 516, Def.'s Mem. Alter J. at 7.) As the Court explained above, the purpose of compensatory damages is to put Plaintiff in the position he would have been in had he not been terminated, so assuming that he would have continued to work for the City, receiving duty disability benefits until he retired, is appropriate. Next, Defendant argues that DeBrock was an insufficient expert witness and should have been barred from testifying. (*Id.* at 9-12.) Once again, however, Defendant simply repeats the same arguments it made in its motion *in limine* without adding any new reasoning or case law that might form a basis for this Court's reconsideration. As the Court explained in the pretrial conference, DeBrock was sufficiently qualified to offer expert testimony on the value of Plaintiff's lost pension benefits. Defendant had ample opportunity to cross-examine DeBrock and Defendant presented its own witness, Tessaro, to testify about the Pension Fund. Tessaro, whose testimony the Court has no reason to

question, testified that a person who receives disability benefits through the Fund receives pension credit, (Trial Tr. at 1049:17-18), and that Plaintiff would have been able to begin collecting a pension at age 55, (Trial Tr. at 1043:10-16). The Court concludes that an evidentiary hearing is not necessary because the evidence presented at trial was sufficient to resolve the issues raised by Defendant's motion for remittitur.

The Court concludes that it previously "patently misunderstood" Plaintiff's position with regards to Defendant's motion for remittitur, *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990), and that its misunderstanding "would work a manifest injustice" if uncorrected, *Christianson*, 486 U.S. at 817. Thus, reconsideration of its previous opinion is appropriate. *See Ligas*, 549 F.3d at 501. Upon consideration of Plaintiff's arguments and a close examination of the Illinois Pension Code, the Court concludes that the $1.2 million award for Plaintiff's lost pension benefits is not outside the range of fair compensation, is not the result of passion or prejudice, and does not shock the judicial conscience. Plaintiff does not challenge the Court's reduction of the portion of the award the parties contribute to emotional pain and suffering by $400,000.00. "There is no exact standard for setting the damages to be awarded on account of pain and suffering," but the damages must be fair and reasonable. (R. 498, Jury Instructions at 36); *Richardson*, 676 N.E.2d at 628. For the reasons stated in its previous opinion, 2014 WL 1613921, at *43, the Court continues to find that a $400,000.00 reduction is appropriate.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion to reconsider its order of remittitur (R. 540). The Court believes, based on its now twenty years of judicial experience, that this new modified verdict is strongly supported by the trial evidence and the law

19

applicable to this hotly contested case. The jury verdict entered in Plaintiff's favor is reduced to a new total of $1.6 million. If Plaintiff does not accept the modified remittitur, he must inform the Court of his intention to proceed to a new trial on damages within 14 days from the entry date of this Memorandum Opinion and Order. Otherwise, the Clerk of the Court is instructed to enter judgment for the Plaintiff in the amount of $1,600,000.00.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: September 4, 2014**