**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT HILLMANN,           ) | |
|          ) | |
|       Plaintiff,    ) | |
|          ) | **04 C 6671** |
|     v.         ) | |
|          ) | **Chief Judge Rubén Castillo** |
| CITY OF CHICAGO,      ) | |
|          ) | |
|       Defendant.    ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On August 23, 2016, the U.S. Court of Appeals for the Seventh Circuit resolved the parties' cross-appeals in this case, directing judgment in favor of the City of Chicago ("Defendant") on Robert Hillmann's ("Plaintiff") retaliatory discharge claim under the Illinois Workers' Compensation Act and affirming this Court's judgment in favor of Defendant on Plaintiff's claims under the Americans with Disabilities Act. *Hillmann v. City of Chi.*, 834 F.3d 787, 795 (7th Cir. 2016). Having thus prevailed on all of Plaintiff's claims against it, Defendant filed a bill of costs and supporting memorandum pursuant to Federal Rule of Civil Procedure 54(d). (R. 602; R. 603.) For the reasons stated below, the Court awards Defendant $23,594.72 in costs.

## BACKGROUND[1]

In 1984, while employed as a truck driver for the City of Chicago, Plaintiff developed cervical radiculopathy in his right arm. *Hillmann*, 834 F.3d at 789-90. In 1995, Plaintiff reached an accommodation with the City designed to limit repetitive use of his injured arm, which led to him being reassigned to the job of chief timekeeper in the City's Bureau of Electricity. *Id.* at 790.

---

[1] The Court gives only a very brief outline of the factual and procedural history of this case to provide adequate context for some of the cost issues discussed below.

Plaintiff was subsequently reassigned multiple times, and in July 2002, as part of a City-wide reduction in force, the City placed him on administrative leave and eliminated his chief timekeeper position—effectively laying him off. *Id.* at 790-92. As a result, Plaintiff brought five claims against the City: (1) breach of contract; (2) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (3) retaliation in violation of the ADA; (4) political hiring and firing decisions in violation of the First Amendment to the U.S. Constitution; and (5) retaliatory discharge and denial of medical benefits in violation of the Illinois Workers' Compensation Act ("IWCA"), 820 ILL. COMP. STAT. 305/1 *et seq.* (R. 125, Third Am. Compl.)

In 2007, U.S. District Judge Wayne R. Andersen granted Defendant's motion for summary judgment on the breach of contract, First Amendment, and denial of medical benefits claims, which left only Plaintiff's claims of discrimination and retaliation under the ADA and IWCA. (R. 188, Mem. Op. and Order.) Following Judge Andersen's retirement, the case was assigned to U.S. District Judge William J. Hibbler, who presided over a jury trial in 2011 on these remaining claims. (R. 311, Min. Entry.) After Judge Hibbler's unfortunate passing, the case was reassigned to this Court. (R. 338, Exec. Comm. Order.)

In 2013, this Court granted Plaintiff's motion for a new trial. (R. 376, Min. Entry.) The jury in the second trial returned a verdict in favor of Defendant on both ADA claims, and for Plaintiff on his IWCA retaliatory discharge claim. (R. 500, Jury Verdict.) The jury's verdict on the ADA retaliation claim was advisory only, as this claim was submitted to the Court.[2] (R. 420, Min. Entry.) This Court later reduced the jury's damage award on the IWCA claim and accepted the jury's advisory verdict in favor of Defendant on the ADA retaliation claim. (R. 539, Mem.

---

[2] The second jury trial simultaneously served as a bench trial on the ADA retaliation claim.

Op. and Order.) Both parties then appealed to the Seventh Circuit, which affirmed the judgment in Defendant's favor and reversed the judgment in Plaintiff's favor. *Hillmann*, 834 F.3d at 795.

On November 25, 2016, Defendant filed a bill of costs with this Court pursuant to Rule 54(d), requesting an award of $27,022.28 in costs. (R. 602.) Specifically, Defendant sought to recover $150.00 in clerk's fees; $776.70 in fees for service of summons and subpoenas; $1,442.26 in photocopying costs; $23,797.73 in deposition and trial transcript-related costs; and $855.59 in witness fees. (*Id.*) Plaintiff contests various of the costs for service of process, photocopying, deposition and trial transcripts, and witness fees as altogether unnecessary, and argues that even if necessary, the amounts incurred were unreasonable. (R. 605, Pl.'s Resp.) In its reply brief, Defendant concedes that certain deposition and trial transcript-related costs were excessive and abandons its outside copying costs, reducing the total costs requested to $25,060.97,[3] but maintains that the remaining costs should be awarded. (R. 606 at 1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(d) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). However, a district court may not tax costs under Rule 54(d) "unless a federal statute authorizes an award of those costs." *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 481 F.3d 442, 447 (7th Cir. 2007). The relevant federal statute is 28 U.S.C. § 1920, *id.*, which authorizes awarding the following as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printings and witnesses; (4) fees for exemplifications and costs of making copies of any materials where the copies are

---

[3] Although Defendant's reply brief states that Defendant is requesting a total of $24,910.97 in costs, (R. 606 at 1), in its computation Defendant appears to have inadvertently omitted the $150.00 in clerk's fees that it is still seeking, (*see* R. 606-2, Def.'s Modified Bill of Costs at 1). Adding the $150.00 back results in a total requested award of $25,060.97.

necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court appointed experts and interpreters, and salaries, fees, expenses, and costs of special interpretation services, 28 U.S.C. § 1920(1)-(6).

In addition to being authorized by statute, "a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). In short, to award a cost, the Court must determine "(1) whether the cost imposed on the losing party is [statutorily] recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chi.*, 218 F.3d 816, 824 (7th Cir. 2000). Under Rule 54(d), "district courts enjoy wide discretion in determining and awarding reasonable costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991). However, "[t]here is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

## ANALYSIS

As noted, Defendant conceded in its reply to a reduction in certain deposition and trial transcript-related costs and abandoned certain outside copying costs. (R. 606 at 2; *see also* R. 606-2, Def.'s Modified Bill of Costs at 9 (omitting copying costs from Aloha Document Services and Med Legal).) After accounting for these concessions, Defendant requests a total award of $25,060.97 in costs. (*Id.* at 7.) Plaintiff contends that the Court should further reduce the award of costs to $18,358.95 because Defendant seeks costs that were neither necessary to the litigation nor reasonable in amount. (R. 605, Pl.'s Resp. at 2.) Plaintiff specifically objects to certain costs in the following categories: (1) deposition transcript-related costs, (2) court hearing and trial

transcript costs, (3) process serving fees, (4) witness fees, and (5) photocopying costs. (*Id.*) The Court addresses each category in turn.

## I.        Deposition Transcript-Related Costs

Defendant seeks $12,018.43 in costs associated with deposition transcripts. (R. 606, Def.'s Reply at 3.) Section 1920 authorizes costs for transcripts "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). "[T]ranscripts need not be absolutely indispensable in order to provide the basis of an award of costs; it is enough if they are 'reasonably necessary.'" *Shanklin Corp. v. Am. Packaging Mach., Inc.*, No. 95 C 1617, 2006 WL 2054382, at *2 (N.D. Ill. July 18, 2006) (quoting *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993)). While Plaintiff does not dispute that Defendant is, in general, entitled to the costs of deposition transcripts, Plaintiff challenges several specific costs incidental to the transcripts. (R. 605, Pl.'s Resp. at 3-4.) Specifically, Plaintiff objects to the costs for: (1) copies of deposition exhibits, (2) delivery fees for deposition transcripts, (3) CD-ROM fees, (4) signature procurement fees, and (5) teleconferencing fees. (*Id.*) The Court discusses each of these subcategories below.

### A.        Deposition Exhibit Costs

Defendant seeks its costs incurred in obtaining copies of exhibits from the court reporter for various depositions taken during the case. (R. 606-2, Def.'s Modified Bill of Costs at 1-6.) Plaintiff contests these costs because "[t]he City has provided no basis to establish [that] copies of exhibits were necessary." (R. 605, Pl.'s Resp. at 3.) Defendant responds that the deposition exhibits were "essential for the preparation of its motion for summary judgment and both trials." (R. 606, Def.'s Reply at 2.) Defendant also represents that it "did not retain copies of every exhibit for each of the depositions taken in connection with this litigation" and therefore needed to obtain copies from the court reporter. (*Id.*)

Costs for deposition exhibits are recoverable if they were "reasonable and necessary, in that they aid in understanding an issue in the case." *Lewis v. City of Chi.*, No. 04 C 6050, 2012 WL 6720411, at *7 (N.D. Ill. Dec. 21, 2012) (citation omitted). The Court finds that obtaining copies of deposition exhibits was reasonable and necessary. As another court in this District has observed, "it is not unreasonable to request copies of the exhibits used during a deposition, for even if the exhibits have been produced in discovery . . . exhibits are often authenticated during a deposition, and it may be necessary for attorneys to use the marked exhibit in order to benefit from that authentication." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 856 (N.D. Ill. 2015). The same rationale applies more generally to any effective use of a deposition exhibit at trial or on summary judgment, not just authentication: because documents are usually referred to in depositions by their assigned exhibit numbers, litigants need to use the exhibit-stamped version of a document in order to benefit from a witness's deposition testimony about the document.[4] In addition, "it could be that the deponent, attorney, or both marked on the exhibit during the deposition, making the deposition copy unique." *Id.*

The Court also finds that the amount incurred by Defendant to obtain copies of deposition exhibits in this case—$173.59 total, spread across 15 depositions, (R. 606-2, Def.'s Modified Bill of Costs at 1-6)—was reasonable given the number of witnesses, the issues involved, and the complexity of the case. The Court notes, for example, that this fact-intensive case was based on events spanning multiple decades, involved multiple experts, and was tried to a jury twice. Accordingly, the Court awards Defendant its requested costs for deposition exhibits totaling $173.59.

---

[4] Otherwise, for example, a witness's deposition testimony about "Deposition Exhibit 7" could be ambiguous because the version of the document submitted in connection with summary judgment or offered at trial is not itself identified as "Deposition Exhibit 7."

**B.     Deposition Transcript Delivery Costs**

Defendant also seeks $240.00 in costs charged by the court reporting agency for delivery of deposition transcripts. (R. 606-2, Def.'s Modified Bill of Costs at 1-5.) Plaintiff argues that these are unrecoverable ordinary business expenses. (R. 605, Pl.'s Resp. at 3.) Defendant responds that delivery charges were incidental to the taking of depositions in that they were necessary to obtain the transcripts. (R. 606, Def.'s Reply at 2-3.) Defendant also counters that since Plaintiff identified and secured the court reporting agency for the depositions in question, he should not now be heard to complain about the necessity or reasonableness of its delivery charges. (*Id.*)

The Seventh Circuit has upheld awarding costs incidental to the taking of depositions, such as *per diem* and delivery charges by the court reporter, even though such costs are not specifically mentioned in Section 1920. *See Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995); *see also Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, No. 13 C 321, 2016 WL 316865, at *3 (N.D. Ill. Jan. 26, 2016) (noting that "the Seventh Circuit has held that a district court may award deposition shipping costs as 'incidentals' in the court's discretion," citing *Finchum*). However, courts in this District—including this Court—have generally followed guidelines established by the Judicial Conference of the United States under which "[c]osts associated with delivering, shipping, or handling transcripts are ordinary business expenses and are not recoverable." *Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 981 (N.D. Ill. 2003) (citing 6 JUDICIAL CONFERENCE OF THE U.S., GUIDE TO JUDICIARY POLICIES AND PROCEDURES, COURT REPORTERS' MANUAL, ch. 20, pt. 20.9.4); *see also Pezl v. Amore Mio, Inc.*, No. 08 C 3993, 2015 WL 2375381, at *4 (N.D. Ill. May 13, 2015) (declining to award costs for deposition transcript delivery fees); *Heneghan v. City of Chi.*, No. 09 C 759, 2011 WL 4628705, at *2 (N.D. Ill. Oct. 3, 2011) ("Although the Court has discretion to award [delivery] fees . . . it

has repeatedly held that shipping and delivery fees constitute an ordinary business expense, and as such will not award them in this case."). The Court finds, in keeping with these decisions, that charges for delivery of deposition transcripts should be treated as ordinary business expenses.[5] The Court therefore declines to award Defendants its requested deposition transcript delivery costs totaling $240.00.

## C.    CD-ROM Fees

Defendant also seeks $350.00 in costs charged by the court reporting agency as "CDROM" fees. (R. 606-2, Def.'s Modified Bill of Costs at 1-4.) Although not entirely clear, these charges appear to be for providing an electronic version of each deposition transcript on compact disc, in addition to the hard copies that were supplied. Plaintiff objects to awarding Defendant its costs for these charges. (R. 605, Pl.'s Resp. at 3.) Courts in this District have generally not permitted recovery for the cost of delivering deposition transcripts electronically on CD when the party also purchased a paper copy of the transcript. *See, e.g.*, *Pezl*, 2015 WL 2375381, at *4 (denying award of costs for CD containing deposition transcript where paper transcript was also obtained); *Menasha Corp. v. News Am. Mktg. Instore, Inc.*, No. 00 C 1895, 2003 WL 21788989, at *3 (N.D. Ill. July 31, 2003) (same). Defendant does not offer any explanation for the necessity of CD-ROM delivery of transcripts, and the Court concludes that such charges are not appropriately awarded where Defendant already purchased paper transcripts of the same deposition. Accordingly, the Court declines to award Defendant costs for the "CDROM" charges totaling $350.00.

---

[5] The Court notes as well that all of the delivery charges that Defendant seeks to recover are identified as "delivery by courier." (R. 606-2, Def.'s Modified Bill of Costs at 1-5.) In view of the many convenient, reliable, and cheaper alternatives—*e.g.*, FedEx, U.S. Postal Service—the Court is not persuaded that delivery of a deposition transcript by courier is reasonably necessary.

### D. Signature Handling

Defendant also seeks $275.00 in signature procurement costs charged by the court reporting agency in connection with the depositions that it took. (R. 606-2, Def.'s Modified Bill of Costs at 1-5.) Plaintiff contends that Defendant is not entitled to these costs because it fails to establish that they are "reasonable and necessary, rather than just convenient." (R. 605, Pl.'s Resp. at 3.) Defendant explains that the court reporting agency charged a separate fee for procuring witnesses' signatures after each deposition and argues that it has a right to reserve signature of its witnesses. (R. 606, Def.'s Reply at 2-3.) Defendant also reiterates that Plaintiff identified and secured the court reporting agency and should not now be heard to complain about the reasonableness or necessity of its charges. (*Id.*)

Courts in this District have declined to award signature procurement costs when the requesting party fails to establish that they are reasonable and necessary rather than merely convenient. *See, e.g.*, *Egebergh v. Vill. of Mount Prospect*, No. 96 C 5863, 2004 WL 868643, at *2 (N.D. Ill. Apr. 20, 2004) (denying recovery of signature procurement costs); *Fait v. Hummel*, No. 01 C 2771, 2002 WL 31433424, at *2 (N.D. Ill. Oct. 30, 2002) (same). Nevertheless, the Court finds that costs for signature procurement in connection with a deposition are reasonable and necessary. Under Federal Rule of Civil Procedure 30, a deponent may request up to 30 days to review his deposition transcript and certify any changes to the court reporter. FED. R. CIV. P. 30(e)(1). When delivering the final deposition transcript, the court reporter must certify whether the deponent requested review of his transcript and must attach any changes that the deponent made. FED. R. CIV. P. 30(e)(2). As best this Court can discern from the invoices that Defendant submitted, the court reporting agency assessed a separate charge for this work, denoting it as "signature handling." (*See, e.g.*, R. 603-4 at 25, Invoice.) Given that this work derives from the requirements of Rule 30, the Court concludes that signature handling was not merely for

Defendant's convenience, but rather was necessary to the proper conduct of litigation. The Court also finds the amount of the charges—$25.00 for each deposition—is reasonable. Accordingly, the Court awards Defendant its requested costs of $275.00 for signature procurement.

### E.    Teleconference Fees

Defendant also seeks costs for the $64.35 "teleconferencing" fee that it incurred in deposing Plaintiff's expert Professor Lawrence DeBrock via videoconference.[6] (R. 606-2, Def.'s Modified Bill of Costs at 6.) Plaintiff argues that teleconference charges, even when incurred in taking a deposition, are not recoverable costs. (R. 605, Pl.'s Resp. at 3-4.) Defendant explains that it elected to depose Dr. DeBrock via videoconference in an effort to save time and money, and because trial was scheduled to commence the following week and Dr. DeBrock was expected to testify. (R. 606, Def.'s Reply at 3.)

While the teleconferencing fee appears to have been a necessary expense inasmuch as Defendant could not have deposed Dr. DeBrock remotely without some sort of audio, courts in this District have declined to award costs for any kind of telephone charges on the basis that they are ordinary business expenses. *Menasha Corp.*, 2003 WL 21788989, at *3 (declining to award telephone costs because they represent ordinary business expenses); *Mihailovich v. Laatsch*, No. 99 C 4780, 2002 WL 91897, at *4 (N.D. Ill. Jan. 24, 2002) ("[C]harges for telephone calls are not recoverable costs." (citation and internal quotation marks omitted)); *see also Wahl v. Carrier Mfg. Co.*, 511 F.2d 209, 217 (7th Cir. 1975) (same). Courts have also declined to award ancillary costs associated with conducting a deposition by videoconference. *See Olivarius v. Tharaldson Prop. Mgmt. Inc.*, No. 08 C 463, 2012 WL 1117468, at *4 (N.D. Ill. Apr. 3, 2012) (denying costs for room rental expenses and other fees associated with depositions conducted via

---

[6] Presumably the videoconference included an audio-only conference line for all participants to dial in, which is what the "teleconferencing" fee was for.

videoconference). While the Court commends Defendant's effort to reduce the costs of litigating this matter, the Court concludes that the teleconferencing fee is properly characterized as a telephone expense that arose in the ordinary course of business.[7] Accordingly, the Court declines to award Defendant this cost.

As a result of the above conclusions, the Court reduces Defendant's requested costs related to deposition transcripts by $654.35.[8] The Court therefore awards Defendant $11,364.08 for these costs.

## II.    Court Hearing and Trial Transcript Costs

Defendant also seeks $9,951.35 in costs that it incurred to obtain transcripts of various court proceedings in this case. (R. 606, Def.'s Reply at 5.) As noted, Section 1920 authorizes costs for transcripts "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Plaintiff objects to some of these costs as entirely unnecessary, namely the costs for: (1) transcripts of the four pretrial conferences that took place on June 9, 2011, March 18, 2013, and April 2-3, 2013; and (2) transcripts of the six court hearings that took place on April 11, 2006, November 30, 2006, October 9, 2008, June 29, 2011, July 31, 2012, and August 28, 2012. (R. 605, Pl.'s Resp. at 4; R. 605-1, Pl.'s Spreadsheet at 2-3.) Plaintiff also argues that even if transcripts of any of these proceedings were necessary, requesting more costly expedited transcripts, as Defendant did in several instances, was not reasonable. (*Id.*) In addition, Plaintiff objects to the costs incurred by Defendant for expedited "daily" transcripts for the second trial in this matter. (R. 605, Pl.'s

[7] The Court notes that Defendant is not being penalized for its effort to reduce litigation costs. Had Defendant's counsel traveled to take Dr. DeBrock's deposition in person rather than conducting it by videoconference, "the expenses incurred for that travel would not have been recoverable costs under 28 U.S.C. § 1920." *Olivarius*, 2012 WL 1117468, at *4. Thus, Defendant has still saved money, despite not recovering the teleconferencing fee.

[8] $240.00 (not awarded for deposition transcript delivery) + $350.00 (not awarded for "CDROM" fees) + $64.35 (not awarded for "teleconferencing" fee) = $654.35.

Resp. at 5-6.) Defendant responds that each of the transcripts it purchased was "necessary to prepare not only post-trial briefs, but also time sensitive pre-trial motions and motions filed during the pendency of trial," and identifies exemplary pretrial conference transcripts that were needed "in order to have precise court rulings on exhibits and motions *in limine* in preparation for trial." (R. 606, Def.'s Reply at 3-4.)

### A. Pretrial Conference Transcripts

The Court turns first to the pretrial conference transcripts. "[T]he cost of transcripts for pretrial proceedings are taxable as costs under Rule 54(d)[.]" *Glenayre Elecs., Inc. v. Jackson*, No. 02 C 0256, 2003 WL 21947112, at *1 (N.D. Ill. Aug. 11, 2003) (citation omitted), *aff'd*, 95 F. App'x 344 (Fed. Cir. 2004). As noted, "a transcript need not be 'absolutely indispensable in order to provide the basis of an award of costs.'" *Majeske*, 218 F.3d at 825 (quoting *Barber*, 7 F.3d at 645). It is enough if the transcript was "reasonably necessary." *Shanklin Corp.*, 2006 WL 2054382, at *2. The Court is persuaded that transcripts of the four pretrial conferences in question were reasonably necessary in litigating this case. It is not unusual, and constitutes a reasonable step for careful litigants, to obtain transcripts of pretrial conferences in order to conform to a court's rulings on matters of evidence, procedure, and other issues that may arise regarding the conduct of trial. *See Allen v. City of Chi.*, No. 09 C 243, 2013 WL 1966363, at *3 (N.D. Ill. May 10, 2013) (awarding costs for transcripts of pretrial conference). This is especially true in complex litigation where pretrial issues are resolved orally by the court rather than in written orders, as repeatedly occurred here.[9] *See id.* ("The costs incurred for the pretrial

---

[9] The Court notes that at the June 9, 2011, pretrial conference, Judge Hibbler granted in part and denied in part the then-pending motions in limine "[a]s stated on the record." (R. 298, Min. Entry.) Similarly, at the March 18, 2013, pretrial conference, this Court resolved 13 pending motions in limine "as indicated on the record." (R. 471, Min. Entry.) Likewise, at the April 3, 2013, pretrial conference, the Court issued oral rulings "on exhibits to be used during opening statements." (R. 478, Min. Entry.)

conference transcripts are reasonable; the court issued a series of oral rulings on motions *in limine*, jury instructions, exhibit and witness lists, and other pretrial matters, making it reasonably necessary for the [defendant] to obtain these transcripts to prepare effectively for trial.").

Plaintiff nevertheless objects to the additional cost of expedited transcripts incurred by Defendant for the pretrial conferences held on June 9, 2011, and March 18, 2013, arguing that "the City failed to explain why ordinary [*i.e.*, non-expedited] copies were not sufficient." (R. 605, Pl.'s Resp. at 4; R. 605-1, Pl.'s Spreadsheet at 2-3.) "Parties cannot recover the added cost of expedited transcripts unless they can show that it was reasonable and necessary to order [them] on an expedited basis." *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 7013478, at *4 (N.D. Ill. Nov. 30, 2016) (citation omitted). The Court finds that requesting an expedited transcript was reasonably necessary for the June 9, 2011, pretrial conference but not for the one on March 18, 2013. The jury trial before Judge Hibbler began on June 13, 2011, the Monday immediately following the June 9, 2011, pretrial conference. (R. 296, Min. Entry.) To have the transcript of that pretrial conference in advance of trial, Defendant obviously needed to have it expedited. But at the time of the March 18, 2013, pretrial conference, the re-trial was set for April 8, 2013—a full three weeks later. (*See* R. 451, Min. Entry (granting emergency motion to continue trial to April 8, 2013).) A non-expedited transcript of that pretrial conference would have sufficed. Accordingly, the Court awards Defendant its requested costs for transcripts of the pretrial conferences that took place on June 9, 2011, and April 2-3, 2013. The Court also awards Defendant costs for the transcript of the March 18, 2013, pretrial conference, but at the reduced

rate of $3.65 per page for a non-expedited transcript.[10] *See Specht v. Google Inc.*, No. 09 C 2572, 2011 WL 2565666, at *1 (N.D. Ill. June 27, 2011) (reducing award of transcript costs to non-expedited rate where defendant offered no convincing justification for expediting transcripts). Defendant's awarded costs are therefore reduced by $60.00 from its requested amount.[11]

### B. Court Hearing Transcripts

Turning to the six court hearings, the Court is not persuaded that transcripts of these proceedings were reasonably necessary to the litigation of this case. Upon review of the record, each proceeding appears to have been a relatively routine status call or motion hearing at which only procedural or minimally substantive issues—such as motions to compel—were addressed or resolved.[12] Courts in this District have generally awarded costs for transcripts of such proceedings only when the prevailing party articulates some specific necessity—for example, where the written record of the status call or motion hearing was the basis for, or relevant to, some subsequent motion or filing, or to supply out-of-state counsel with a record of the proceedings. *Compare Clearlamp, LLC*, 2016 WL 7013478, at *4 (awarding costs for "status

---

[10] The Judicial Conference has set the maximum rate for ordinary, non-expedited transcripts at $3.65 per page. *See* FEDERAL COURT REPORTING PROGRAM, http://www.uscourts.gov/services-forms/federal-court-reporting-program (last visited Aug. 7, 2017). The Northern District of Illinois uses the same maximum rate. *See* N.D. ILL. L.R. 54.1(b); N.D. ILL. GEN. ORDER 12-0003, https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_clerksoffice/rules/admin/pdf-orders/General Order 12-0003 - Transcript Copy Rates.pdf.

[11] Defendant requests costs for the 50-page March 18, 2013, pretrial conference transcript at the expedited rate of $4.85 per page. (R. 606-2, Def.'s Modified Bill of Costs at 7; R. 605-1, Pl.'s Spreadsheet at 3.) Reducing the rate for that transcript to $3.65 per page reduces Defendant's awarded costs by $60.00 (50 x ($4.85 - $3.65) = $60.00).

[12] As a few examples, the status hearing on April 11, 2006, dealt with a motion to compel answers to deposition questions filed by Plaintiff, which Magistrate Judge Maria Valdez granted in part in open court. (R. 97, Min. Entry; R. 82, Mot.) The status hearing on November 30, 2006, before Judge Andersen appears to have dealt only with a request by Plaintiff to file a brief exceeding 15 pages. (R. 169, Min. Entry.) The status hearing on October 9, 2008, appears to have dealt with a request by Plaintiff to file a sur-reply brief, which Judge Andersen granted in open court. (R. 218, Min. Entry.) The status hearing on June 29, 2011, appears to have dealt with Plaintiff's motion for a new trial, which Judge Hibbler took under advisement and set a briefing schedule for. (R. 315, Min. Entry.)

hearing transcripts" because they were later "incorporated into or relied on in preparation of submissions" to the court), *and SP Techs., LLC v. Garmin Int'l, Inc.*, No. 08 CV 3248, 2014 WL 300987, at *2 (N.D. Ill. Jan. 10, 2014) (awarding costs for transcripts of "hearings and status conferences" based on necessity of supplying out-of-state counsel with written record of proceedings and "for use in filing and responding to various motions"), *with Piotrowski v. Menard, Inc.*, No. 13 C 5572, 2016 WL 7157353, at *3 (N.D. Ill. Dec. 8, 2016) (denying transcript costs where defendant "d[id] not explain or attempt to meet its burden to explain why transcribing this routine motions hearing was reasonably necessary"), *and Am. Safety Cas. Ins. Co. v. City of Waukegan*, No. 07 C 1990, 2011 WL 6378817, at *5 (N.D. Ill. Dec. 20, 2011) (denying costs for motion hearing transcript, reasoning that "[w]hile there may be some plausible reason why [plaintiff] needed the transcript, it has not articulated one and the Court need not speculate"). Defendant does not offer any specific justification for obtaining transcripts of these six status calls and motion hearings, and none is apparent to the Court. Absent some specific need, careful notes by counsel ordinarily suffice in this context. The Court therefore declines to award costs for transcripts of these six proceedings, subtracting $340.20 in costs from Defendant's requested amount.[13]

### C.     Trial Transcripts

As noted, Plaintiff also objects to the costs incurred by Defendant for expedited daily transcripts of the second trial. Plaintiff argues that expedited transcripts were not reasonably necessary and that these costs should be reduced from $6.05 to $4.85 per page, the rate for 14-day transcripts. (R. 605, Pl.'s Resp. at 5-6; R. 605-1, Pl.'s Spreadsheet at 3.) A court may award

---

[13] Defendant requested the following amounts for transcripts of each status call or motion hearing: $62.05 for April 11, 2006, $29.20 for November 30, 2006, $25.55 for October 9, 2008, $19.40 for June 29, 2011, and $204.00 collectively for July 31 and August 28, 2012. (R. 606-2, Def.'s Modified Bill of Costs at 6-7.)

costs for expedited trial transcripts if "it was reasonable and necessary to order transcripts on an expedited basis." *Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 945 (N.D. Ill. 2012) (citation omitted). Courts consider several factors in determining whether to award costs for daily trial transcripts:

> (1) the length of the trial and the complexity of the issues, (2) whether a daily transcript was necessary to minimize disagreement over the testimony of witnesses, (3) whether proposed findings of fact were required, (4) whether the case involved expert witnesses whose cross-examination required knowledge of the exact wording of their previous testimony or that of any other witness, (5) the size of the claim, (6) and the importance of witness credibility.

*Shanklin Corp.*, 2006 WL 2054382, at *2. Plaintiff argues that the second trial, which lasted seven days, was "straightforward and not complex" and that daily transcripts were not needed to timely file proposed findings of fact and conclusions of law and post-trial motions. (R. 605, Pl.'s Resp. at 5-6.) Defendant responds that daily transcripts were necessary not just for post-trial briefs but also "motions filed during the pendency of trial, including the City's motion to enter findings [of] fact and conclusions of law," as well as to prepare for the next day's testimony or argument. (R. 606, Def.'s Reply at 3.) Defendant also argues that the trial satisfies each of the factors listed above. (*Id.* at 4.)

Considering these factors, the Court is persuaded that daily trial transcripts were reasonably necessary in this hard-fought case. While the second trial was relatively short, it was reasonably complex, in that Plaintiff was asserting multiple discrimination and retaliation claims and the events giving rise to his claims spanned multiple decades and involved a lengthy roster of City personnel. *See Hillmann*, 834 F.3d at 789-92. The involved procedural history of this case contributed to its complexity. The second trial also included new witnesses who had not testified at the first—namely, two senior City employees who had previously invoked their Fifth Amendment privilege against self-incrimination and Plaintiff's pension-damages expert, whose

testimony Judge Hibbler had precluded at the first trial. *See id.* at 792. In addition, a significant sum was at stake, as evidenced by the jury's $2 million damages award, which this Court subsequently reduced to the still-sizeable sum of $1.6 million. *See id.* at 792-93. Defendant also filed a motion for judgment as a matter of law during trial that included and relied on numerous excerpts from the trial transcript.[14] (R. 490, Mot.; R. 491, Def.'s Mem.) In light of these factors, the Court concludes that expedited daily transcripts were reasonably necessary. Accordingly, the Court awards Defendant its requested costs for daily transcripts of the second trial in this matter.[15]

After reducing and subtracting certain costs as described above, the Court awards Defendant costs in the amount of $9,551.15 for trial and court hearing transcripts.

## III. Process Serving Fees

Defendant also seeks $776.70 in costs it incurred for service of process in this case. (R. 606, Def.'s Reply at 5.) Plaintiff concedes that costs for service of process are generally recoverable, but contends that Defendant does not provide sufficient information to allow full recovery of costs for service on Dr. Michael Gonzales, Plaintiff's treating physician, and Dr. DeBrock. (R. 605, Pl.'s Resp. at 6-7.) Specifically, Plaintiff argues that Defendant's process server invoices do not indicate how much time it took to effectuate service on Drs. Gonzales and DeBrock, and that without this information, Defendant is only entitled to the minimum amount

---

[14] While the Court denied Defendant's JMOL motion without prejudice, (R. 494, Min. Entry), the motion was still procedurally necessary to preserve Defendant's ability to make a renewed JMOL motion after trial under Federal Rule of Civil Procedure 50(b)—which Defendant did make, (R. 508, Def.'s Renewed Mot.).

[15] Plaintiff also argues that Defendant overstated the page count of the transcript of the first trial in this matter by 269 pages—requesting costs for 1,301 transcript pages when the transcript comprised only 1,032 pages. (R. 605, Pl.'s Resp. at 6.) Defendant concedes that this was a mistake. (R. 606, Def.'s Reply at 4-5.) Defendant represents that it corrected these errors in its modified bill of costs, (*id.*), so the Court need not address the issue further.

that would have been charged by the U.S. Marshals Service ("USMS") to effectuate service. (*Id.* at 7-8.) Plaintiff also objects to the fee for serving Dr. Gonzales a second time on March 16, 2006, arguing that serving him twice in connection with this case was unnecessary. (*Id.*) Defendant responds that the private process server that it utilized set the fees for serving Drs. Gonzales and DeBrock based on the location of service and the expedited or "rush" delivery requested, not based on the actual time needed to effectuate service. (R. 606, Def.'s Reply at 5.) Defendant also explains that there was good reason Dr. Gonzales was served twice—the first subpoena to him sought medical records that were in his possession and the second sought his deposition. (*Id.*)

Private process server fees are awardable costs under 28 U.S.C. § 1920(1), provided they do not exceed what the USMS would have charged to effectuate service. *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996). The USMS charges an hourly rate for personal service of process. *See* 28 C.F.R. § 0.114(a)(3). To know the maximum awardable cost—that is, what the USMS would have charged—the Court needs to know how much time it took to effectuate service on both Dr. Gonzales and Dr. DeBrock. Conversely, if "the invoices do not specify the time spent . . . by the process servers, it cannot be determined whether the rates they charged exceeded the maximum allowable rate." *Serwatka v. City of Chi.*, No. 08 C 5616, 2011 WL 2038725, at *2 (N.D. Ill. May 24, 2011). As Plaintiff correctly notes, the process server invoices supplied by Defendant do not identify the time it took to effectuate service, nor do they reveal an hourly rate for the process server (which would allow a calculation of the time spent). (R. 603-4 at 67-70, Invoices for Dr. Gonzales; *id.* at 74-75, Invoice for Dr. DeBrock.) The Court is therefore unable to determine whether the fees exceeded what the USMS would have charged. In these circumstances, courts have generally awarded only the minimum amount that the USMS

would have charged—one hour at the statutory rate. *See Serwatka*, 2011 WL 2038725, at *3 (collecting cases); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 984 (N.D. Ill. 2010) (awarding USMS rate for one hour of service where invoices "d[id] not indicate the amount of time required to effectuate service"). In 2006, the year that Defendant served Dr. Gonzales, USMS charged $45.00 per hour for service of process. *See* Revision to U.S. Marshals Service Fees for Services, 73 Fed. Reg. 69,552, 69,553-54 (Nov. 19, 2008) (outlining rates in effect since 2000, amending 28 C.F.R. § 0.114); *see also LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, at *2 (N.D. Ill. Oct. 20, 2011) ("Prior to [December 19, 2008], the service fee was $45.00."). By 2013, when Dr. DeBrock was served, the rate had increased to $55.00 per hour. *Id.* at *2. Accordingly, the Court awards $45.00 for service of each subpoena on Dr. Gonzales and $55.00 for service on Dr. DeBrock.[16]

In addition, the Court is satisfied that costs for both subpoenas to Dr. Gonzales should be awarded. "To award costs for the service of subpoenas, the court need only determine that the subpoenas were reasonably necessary at the time that they were served." *Ayala v. Rosales*, No. 13 CV 4425, 2016 WL 2659553, at *3 (N.D. Ill. May 9, 2016) (citation and internal quotation mark omitted). The Court finds that it was reasonable for Defendant to first seek the medical records held by Dr. Gonzales before seeking to depose him in relation to those records. The Court also notes that Federal Rule of Civil Procedure 45, which governs subpoena practice, does not require litigants to serve subpoenas duces tecum and ad testificandum together whenever both documents and testimony are sought from a non-party. In fact, it expressly allows that each

---

[16] Some of Defendant's process server invoices also include a witness fee of either $40 or $45. (R. 603-4 at 69-70, Invoice for Dr. Gonzales; *id.* at 74-75, Invoice for Dr. DeBrock.) The Court's reduction to the USMS rate applies only to the fees incurred for service of process; it does not impact the witness fees.

"may be set out in a separate subpoena." FED. R. CIV. P. 45(a)(1)(C). The Court therefore awards costs for service of both subpoenas to Dr. Gonzales, but at the reduced rate discussed above.

Plaintiff does not contest Defendant's remaining costs for service of process of $220.00. Therefore, the Court awards Defendant $365.00 in costs for service of process.

## IV.    Witness Fees

Defendant also seeks a total of $855.59 in witness fees, which includes witness travel expenses. (R. 606-2, Def.'s Modified Bill of Costs.) Of this amount, Plaintiff objects to $662.99 in airfare, ground transportation, hotel accommodations, and meals for Paul White, an economist and Defendant's retained expert witness, to travel from Washington, D.C. to Chicago for his June 14, 2007, deposition. (R. 605, Pl.'s Resp. at 8.) Plaintiff argues that he did not insist on deposing White in Chicago[17] and even allowed, in a letter to Defendant's counsel, for the possibility that the deposition take place by telephone. (*Id.*; *see also* R. 605-3, 2/20/07 Pl.'s Ltr. to Def. (requesting "availability for [White's] deposition either here in Chicago or by telephone . . . prior to March 15, 2007").) Plaintiff contends that because Defendant elected for White to be deposed in Chicago, his travel expenses should not be recoverable. (R. 605, Pl.'s Resp. at 9.) As a secondary reason to deny White's travel expenses, Plaintiff argues that Defendant never called him to testify at either trial and did not rely on the expert report he prepared. (*Id.*) Consequently, according to Plaintiff, Defendant effectively disclaimed the necessity of White's opinions. (*Id.*)

The Court finds Plaintiff's arguments for denying White's travel expenses unpersuasive. Section 1920 authorizes awarding costs for "[f]ees and disbursements for . . . witnesses." 28 U.S.C. § 1920(3). "The witness fee specified in § 1920(3) is defined in 28 U.S.C. § 1821," *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987), which provides that

---

[17] Specifically, Plaintiff points out that in the notice to take Mr. White's deposition, he left the "address" field blank. (R. 605, Pl.'s Resp. at 8; R. 605-2, White Dep. Notice.)

witnesses who travel to testify at trial or sit for a deposition must be paid an "attendance fee" of $40 per day and must be reimbursed for their travel and related expenses, *see* 28 U.S.C. § 1821(a)(1), (b), (c)(1), (c)(3)-(4), (d)(1). "Collectively, 28 U.S.C. §§ 1821 and 1920(3) authorize the award of costs to reimburse witnesses for their reasonable travel and lodging expenses." *Majeske*, 218 F.3d at 825-26. Accordingly, courts in this District have routinely awarded costs for expert witnesses' travel expenses. *See, e.g.*, *Nilssen v. Osram Sylvania, Inc.*, No. 01 C 3585, 2007 WL 257711, at *3 (N.D. Ill. Jan. 23, 2007) (awarding expenses for expert witness to travel to testify at trial even though trial was belatedly rescheduled); *Vardon Golf Co. v. Karsten Mfg. Corp.*, No. 99 C 2785, 2003 WL 1720066, at *9 (N.D. Ill. Mar. 31, 2003) (awarding costs for expert witness' travel expenses). Although Plaintiff did at one point raise the prospect of a telephonic deposition of White, in the same correspondence Plaintiff requested dates of availability for his deposition "here in Chicago." (R. 605-3, 2/20/07 Pl.'s Ltr. to Def.) And Plaintiff ultimately confirmed that the deposition would take place in Chicago. (R. 605-4, 3/23/07 Pl.'s Ltr. to Def.) Given the parties' agreement that White's deposition would take place in Chicago, Plaintiff's retrospective objection that the deposition could have been telephonic is not a basis to deny costs. *See BASF Corp. v. Old World Trading Co.*, No. 86 C 5602, 1992 WL 229473, at *3 (N.D. Ill. Sept. 11, 1992) ("A joint decision on where to hold a deposition does not constitute any logical basis for refusing to grant witness travel costs which are actually incurred.").

Plaintiff's reliance on *M.T. McBrian, Inc. v. Liebert Corp.*, 173 F.R.D. 491 (N.D. Ill. 1997), is unpersuasive because that case dealt with the unrelated question of whether the "reasonable fee" that must be paid under Federal Rule of Civil Procedure 26(b)(4)(E)(i)[18] when

---

[18] This provision was previously located in Rule 26(b)(4)(C).

deposing an adverse party's expert includes the expert's travel and lodging expenses. *Id.* at 493. That issue is beside the point, because the Seventh Circuit has clearly held that a witness' travel and lodging expenses are awardable as costs under Rule 54(d). *See Majeske*, 218 F.3d at 825. In addition, the circumstances in *M.T. McBrian* were different from those here. The court reasoned initially that "[i]t would seem logical that if an expert witness is brought to the [deposing] attorney instead of the attorney going to the witness, the witness[]' travel expenses should be paid by the [deposing] party." *Id.* But the court found that logic inapplicable to the facts of the case because the expert had not actually travelled to the deposing attorneys' city, St. Louis; instead, the deposition took place at the plaintiff's counsel's office in Chicago. As a result, the defendant was "being asked to pay not only for their [counsel's] own travel costs to Chicago from St. Louis to depose [the expert], but also [the expert's] costs in coming to Chicago from Minnesota." *Id.* The circumstances here are different: White travelled to Chicago—where Plaintiff's counsel is located—for his deposition, not to some other city that would have necessitated travel for Plaintiff's counsel as well.[19] If anything, *M.T. McBrian* supports taxing White's travel expenses against Plaintiff, because the facts here squarely fit the scenario in which the court found it "logical" that the deposing party should pay for an expert's travel expenses. *See id.*

Plaintiff's second argument also is unpersuasive because recovering travel expenses for an expert to attend his deposition does not require that the expert testify at trial. Nothing in

---

[19] Decisions that have relied on *M.T. McBrian* to deny costs under Rule 54(d) for experts' travel expenses are distinguishable for the same reason. For example, in *SP Technologies, LLC v. Garmin International, Inc.*, No. 08 CV 3248, 2014 WL 300987 (N.D. Ill. Jan. 10, 2014), the court cited *M.T. McBrian* as support for denying costs for an expert's travel expenses. *Id.* at *6. The expert resided in Pittsburgh but his deposition took place in Washington, D.C., where his counsel was located. *Id.* The deposing attorneys, who were located in Chicago, also had to travel to Washington, D.C. for the deposition. *Id.* The court denied costs for the expert's travel expenses, explaining that they "would not have been incurred if [he] had been deposed in [his] home location[]." *Id.*

Section 1821 conditions reimbursing witnesses for their travel expenses to appear for a deposition on the witness testifying at trial. Instead, Section 1821 mandates that a witness sitting for deposition "*shall be paid* the fees and allowances provided by this section." 28 U.S.C. § 1821(a)(1) (emphasis added).[20] Likewise, nothing in Section 1920 conditions taxing costs for a witness' travel expenses on that witness testifying at trial. Accordingly, courts have routinely taxed the witness fees and travel expenses specified in Section 1821 even where the witness did not testify at trial. *See, e.g.*, *Stollings v. Ryobi Techs., Inc.*, No. 08 C 4006, 2015 WL 4100479, at *6 (N.D. Ill. July 6, 2015) (awarding costs for expert's travel expenses to attend trial, rejecting argument that "because [the expert] did not testify . . . those costs are not recoverable" and explaining that "a witness's costs can be taxed even if the witness ultimately does not testify"); *Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *25 (N.D. Ill. Apr. 16, 2012) (awarding costs for travel expenses incurred by expert to attend his deposition, overruling objection that the costs were unnecessary "as [the expert] did not testify at trial"); *Rodriguez v. Ithal*, No. 02 C 7588, 2003 WL 22284202, at *3 (N.D. Ill. Oct. 2, 2003) (awarding witness fees for experts' depositions, rejecting argument that "prevailing party may not recover the fees of expert witnesses who did not testify at trial"); *see also M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1410 (7th Cir. 1991) (rejecting argument that "witness [attendance] fees for witnesses who did not testify at trial were improperly allowed"). In addition, the Seventh Circuit "ha[s] consistently maintained that costs may be awarded for deposing a witness who is not called at trial as long as the deposition was necessary when taken." *Finchum*, 57 F.3d at 534.[21] While

---

[20] The only exception—when "otherwise provided by law," 28 U.S.C. § 1821(a)(1)—does not apply here.

[21] Although the Seventh Circuit's statement in *Finchum* appears to relate to costs for deposition transcripts—which are taxable under subparagraph (2) of Section 1920 rather than subparagraph (3)—both transcript costs and a witness' travel costs are part of the expenses incurred when the witness is deposed. The Court therefore sees no reason to treat the two categories of costs differently.

Plaintiff argues that Defendant "effectively withdrew" White as an expert later in the case, (R. 605, Pl.'s Resp. at 9), Plaintiff clearly believed at the time that White's opinions were sufficiently relevant to warrant a deposition. The Court is therefore satisfied that White's deposition was reasonably necessary when taken and that awarding his travel expenses is appropriate notwithstanding that he did not ultimately testify.

As a final matter, the Court finds that $662.99 is a reasonable sum for roundtrip airfare from Washington, D.C. to Chicago, ground transportation, and hotel accommodations and meals for one night—the travel expenses incurred by White for his deposition. The Court therefore awards Defendant its requested total of $855.59 in witness fees.

**V.       Photocopying Costs**

Defendant also seeks in-house photocopying costs for 8,726 pages at $0.15 per page, for a total of $1,308.90. (R. 606-2, Def.'s Modified Bill of Costs at 9.) A prevailing party may recover costs for photocopies that were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Plaintiff does not contest the necessity of the photocopies or the quantity of documents or pages photocopied. Plaintiff objects only that the per-page rate sought by Defendant is higher than the $0.10 per page that it sought in *Allen v. City of Chicago*, No. 10 C 3183, 2016 WL 1070828 (N.D. Ill. Mar. 16, 2016). (R. 605, Pl.'s Resp. at 10-11.) Plaintiff points out that *Allen* partially overlapped in time with this case and argues that the discrepancy in rates warrants reducing Defendant's awarded costs for photocopies to the rate that it sought in *Allen*. (*Id.*)

Courts in this District have regularly found that photocopying rates between $0.10 and $0.20 per page are reasonable for purposes of Section 1920(4). *See, e.g.*, *Pezl*, 2015 WL 2375381, at *7; *Harkins*, 286 F. Supp. 2d at 982. And this Court in particular has previously found $0.15 per page to be a reasonable rate. *Lewis*, 2012 WL 6720411, at *9. As to the seeming

discrepancy between this case and *Allen*, Defendant explains that *Allen* was handled by outside counsel whereas this case was handled in-house by the City's Law Department—different counsel, different photocopy rates. (R. 606, Def.'s Reply at 7.) Upon review of the attorney appearances in each case, the Court is satisfied with Defendant's explanation and finds no actual inconsistency in the differing rates sought by Defendant here as compared to *Allen*.[22] Because $0.15 per page is otherwise a reasonable rate, *see Lewis*, 2012 WL 6720411, at *9, the Court awards Defendant its requested total of $1,308.90 for in-house photocopying costs.

## VI. Clerk's Fees

Last, Defendant seeks fees of the clerk in the amount of $150.00. (R. 606-2, Def.'s Modified Bill of Costs at 1.) Section 1920 authorizes awarding costs for "[f]ees of the clerk." 28 U.S.C. § 1920(1). Plaintiff does not contest awarding costs for clerk's fees; the Court accordingly awards Defendant $150.00 in clerk's fees.

CONCLUSION

For the foregoing reasons, the Court awards Defendant a total of $23,594.72 in reasonable costs as the ultimate prevailing party in this hotly contested litigation.

**ENTERED:**

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: August 16, 2017**

---

[22] Counsel's appearances reflect that in *Allen*, an attorney from the law firm Drinker Biddle & Reath LLP was designated lead counsel for the City, whereas here, a member of the City's internal Law Department held that designation.